# Law Offices of Mark W. Ford
# A Limited Liability Company

P.O. Box 110, 4 ½ N. Broadway
Gloucester City, New Jersey 08030
(856) 456-8811 - (856) 456-8828
Fax: (856) 456-8558
Email: markfordlaw@juno.com
PLEASE REPLY TO P.O. BOX 110, GLOUCESTER CITY, NJ 08030

"Protecting the Rights of People Since 1992"

April 16, 2019

The Honorable Jerrold N. Poslusny, Jr.
United States Bankruptcy Court
P.O. Box 2067
Camden, NJ  08102

**RE: Chapter 13 Bankruptcy**
    **Case No: 14-29177**
    **Debtor: Amalia Mejias**

Dear Judge Poslusny:

Please accept this letter in further support of the debtor's notice of Private Sale which is returnable April 30, 2019. Please note the corrections and additions from the Trustee's letter which was filed April 3, 2019 but was mistakenly dated for January 8, 2015. Please note that I enclose a copy of the Contract of Sale for everyone's information.

Please note that the property was originally listed for sale and this buyer was the only one interested and the time the purchase was entered into many years ago. Please note that the buyers have been paying over time for the past several years the amounts owed and have already paid the entire $40,000.00 which was both before and after the filing of this bankruptcy split between the 1/6 for Amalia Mejias and the other 5/6 going to her other sisters and brothers who were also beneficiaries of the estate of the late mother who this house represents.

Therefore, I note the Trustee seeks to split up the proceeds which she thinks are going to come in if the court approves the already completed transaction except for the signing and transferring of the Deed. Since all of the monies have already been transferred, there are no monies to be exchanged and there will not be left over from the sale because all sale monies have already been paid and already been distributed.

Respectfully,

MARK W. FORD, ESQUIRE

MWF:rp
Encs.

Cc: Amalia Mejias
    Raymond H. Shockley, Jr. Staff attorney for Isabel Balboa, Trustee

### Rent to Own - House

**THIS AGREEMENT** dated this September 27, 2010,

by and between:

_Amalia Mejias_____, residing
at _2901 Cramer St_____
_Camden, NJ 08105_____
Herein after referred to as the "Landlord/Seller"

AND

_Sonia A Mota De Jesus_____, residing
at _Ramon L Jesus Mota_____
_611 Bayle St Camden NJ 08102_____
Herein after referred to as the "Tenant/Buyer"

LANDLORD/SELLER AND TENANT/BUYER DO HEREBY COVENANT, CONTRACT AND AGREE AS FOLLOWS:

1. **The House**
   This Agreement is subject to the Residential Lease Agreement between Landlord/Seller and Tenant/Buyer, dated October 1, 2010.

   In consideration of the rent payment to be paid by Tenant/Buyer and of the other covenants and agreements herein contained, The Landlord/Seller rents to Tenant/Buyer the House, located at _926 N 7th St._____ in Camden, New Jersey.

   The Landlord/Seller hereby grants to Tenant/Buyer an exclusive option to purchase the Premises; the Landlord/Seller and Tenant/Buyer acknowledge that they will, to the best of their ability, comply with the necessary requirements set out pursuant to the applicable legislation of the State of New Jersey (Hereinafter referred to as the "House").

   The House shall be used only as a private dwelling and for no other purposes whatsoever. The Tenant/Buyer shall comply with all Zoning Ordinances, Protective Covenants and Deed Restrictions.

   The House includes _3_ bedrooms and _1_ bathroom(s).

2. **Terms**
   This Agreement shall be four half (4.5) years and shall remain in effect from October 1,

2010 until April 1, 2015 at 12 o'clock midnight.

3. **Rent**
The Rent for the House is **six hundred and fifteen dollars ($615)**. This amount shall be paid monthly. The said sum being due on or before the 1st of the month during the length of this Agreement. The said sum shall be payable at the residence of the Landlord/Seller, or at such other place as the parties can agree upon.

The Tenant/Buyer agrees that rent shall be paid in lawful money of the United States by Check or Money Order.

Should a Tenant/Buyer rent payment to the Landlord/Seller be returned for insufficient funds, the Tenant/Buyer shall be liable to the Landlord/Seller for fifty dollars ($50) plus banking penalties as a penalty.

Should a Tenant/Buyer rent payment to the Landlord/Seller be it has not been received by the 10th day of the month, the Tenant/Buyer shall be liable to the Landlord/Seller for fifty dollars ($50) as a penalty.

4. **Assign/Sublet**
Tenant/Buyer agrees not to assign this Lease, nor to sublet any portion of the property, nor to allow any other person to live therein other than as named in paragraph 4 above without first obtaining written permission from Landlord/Seller and paying the appropriate surcharge. Further, it is agreed that covenants contained in this Lease, once breached, cannot afterward be performed, and that unlawful detainer proceedings may be commenced at once, without notice to Tenant/Buyer.

5. **Security Deposit**
Upon executing of this Agreement, the Tenant/Buyer shall deliver a security deposit to the Landlord/Seller in the amount of **one thousand two hundred and thirty dollars ($1,230)** (the 'Security Deposit'). The Security Deposit will not be returned to the Tenant at the end of this tenancy. As per this agreement the security deposit will be credited to the purchase of the Premises and used as a final payment.

The Tenant is not entitled to interest on the security deposit.

Upon premature termination of this agreement parties acknowledge that the Landlord/Seller will be permitted to deduct from the Security Deposit any amounts for reasonable cleaning of, and repair of damages to, the premises, or other reasonable damages resulting from a default by Tenant, ordinary wear and tear excepted.

If the Landlord/Seller sells or assign the leased premises, the Landlord/Seller shall have the right to transfer Tenants security deposit to the new owner or assignee to hold under this Lease, and upon so doing the Landlord/Seller shall be released from all liability to Tenant for return of said security deposit.

6. **Expenses**
   The Tenant/Buyer is responsible for all payments for the following expenses:
   i. Property Tax;
   ii. Power/Electricity;
   iii. Heat;
   iv. Gas;
   v. Water/Sewage;
   vi. Cable;
   vii. Phone;
   viii. Satellite;
   ix. Security System;
   x. High Speed Internet; and
   xi. All other bills incurred during the term of this agreement.

7. **Insurance**
   No rights of storage are given by this Agreement. Landlord/Seller shall not be liable for any loss of Tenant's/Buyer's property by fire, theft, breakage, burglary, or otherwise, nor for any accidental damage to persons or property in or about the leased premises resulting from electrical failure, water, rain, windstorm, etc., which may cause issue or flow into or from any part of said premises or improvements, including pipes, gas lines, sprinklers, or electrical connections, whether caused by the negligence of Landlord/Seller, Landlord's/Seller's employees, contractors, agents, or by any other cause whatsoever. Tenant/Buyer hereby agrees to make no claim for any such damages or loss against Landlord/Seller. **Tenant/Buyer also agrees to purchase renter's insurance no later than fourteen (14) calendar days after the execution of this agreement.**

8. **Improvements**
   Any improvements to the property made by Tenant/Buyer inside or outside must not be removed without written permission from Landlord/Seller. This includes landscaping, scrubs, flowers, walkways, out buildings such as storage sheds and play-houses, etc. Any interior improvements the Tenant/Buyer may have made to the property must also remain. Improvements such as but not limited to the following are installation of ceiling fans, book shelves, shelving, light fixtures, etc.

9. **Emergency Access**
   Landlord/Seller has the right of emergency access to the leased premises at any time and access during reasonable hours to inspect the Premises.

10. **Abandonment**
    If Tenant/Buyer leaves said premises unoccupied for sixty (60) days while rent is due and unpaid, Landlord/Seller is granted the right hereunder to take immediate possession thereof and to exclude Tenant/Buyer there from; removing all Tenant's/Buyer's property contained therein and placing it into storage at Tenant's/Buyer's expense.

11. **Disclosure of Information on Lead-Based Paint**
    Housing built before 1978 may contain lead based paint. Lead from paint, paint chips,

and dust can pose health hazards if not taken care of properly. Before renting pre-1978 housing, Landlord/Seller must disclose the presence of known lead-based paint hazards in the dwelling. Tenants/Buyer must also receive a Federally approved pamphlet on lead poisoning prevention.

12. **Exclusivity**
This option to purchase is exclusive and non-assignable. Any attempted assignment, delegation, transfer or conveyance of this option to purchase without the Landlord/Seller express written permission is void and shall terminate this agreement.

13. **Purchase Price**
The total purchase price for the House pursuant to this Option to Purchase Agreement is **forty thousand dollars ($40,000)**. If Tenant/Buyer timely exercises this option, is not in default of the Lease Agreement and actually closes the conveyance of the Property, the Tenant/Buyer shall be credited, at closing, the sum of ninety-nine point three hundred and sixty seven percent (99.367%) from each lease payment if every lease payment was timely remitted to Landlord/Seller pursuant to the Lease Agreement. No credit shall be given at closing if any lease payment was received by the Landlord/Seller after the due date established in the Lease Agreement.

14. **Option Consideration**
The Tenant/Buyer shall remit option consideration in the sum of **five thousand seven hundred and seventy dollars ($5,770)** to Landlord/Seller upon execution of this Option to Purchase Agreement, which amount is non-refundable. In the event Tenant/Buyer timely exercises this option, is not in default of the Lease Agreement and actually closes the conveyance of the Property, the option consideration shall be credited to the purchase price at closing. If Tenant/Buyer fail to exercise this option, defaults in the Lease Agreement or fails to close the conveyance, the option fee shall not be refunded.

15. **Financing**
Financing shall not be a condition of performance of this Option to Purchase Agreement. It is the Tenant/Buyer sole responsibility to arrange financing for the transactions. Landlord/Seller has made no representations to Tenant/Buyer regarding the availability of financing of Tenant/Buyer ability to qualify for financing.

16. **Remedies Upon Default.**
In the event of any such default by Tenant/Buyer of this Option to Purchase Agreement or the Lease Agreement, then in addition to any other remedies available to Landlord/Seller at law or in equity, Landlord/Seller shall have the option to terminate this Option to Purchase Agreement and all rights hereunder by giving written notice of termination. Tenant/Buyer is not entitled to any refund of rent or option consideration whatsoever.

All of the terms and conditions of the Lease Agreement must be complied with in order for this option to be enforceable. In the event this Option to Purchase Agreement conflicts with any part of the corresponding Lease Agreement, the terms and conditions

*[initials: AM, ER, AW]*

competent jurisdiction if filed more than one year subsequent to the date the cause(s) of action accrued.

The Tenant/Buyer was asked if he/she could speak, read and understand English. He/she was told that signing below would indicate that they understood what they were signing and that he/she did speak and read English.

*Tenant/Buyer was asked if he/she spoke and understood English. Due to the language barrier this contract was translated by Pedro A. Mejias, in Spanish.*

**Independent Legal Advice**

Tenant/Buyer hereby acknowledges and confirms that he was advised by the Landlord/Seller to obtain independent legal or other professional advice and that by executing this Agreement, Tenant/Buyer hereby confirms that he has had the opportunity to seek independent legal or professional advice prior to executing this Agreement and has:

Waived the right to obtain such independent legal or other professional advice.

The parties hereby indicate by their signatures below that they have read and agree with the terms and conditions of this Agreement in its entirety.

**As to Landlord/Seller, this September 27, 2010,**

**Landlord/Seller:**

Sign: *Amalia Mejias*

Print: *Amalia Mejias*

Translator

Sign: *[signature]*

Print: *Pedro A Mejias*

**As to Tenant/Buyer, this September 27, 2010,**

**Tenant/Buyer:**

Sign: *Zania Q Matos De Jerez - Ramon L Jerez Mota*

Print: *Zania Q Matos DeJerez - Ramon L Jerez Mota*